

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 24, 2017**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JACOB WESTLEY LARA and | § | CASE NO. 16-50201-rlj7 |
| TOBITHA ANN LARA, | § | |
| | § | |
| Debtors. | § | |

## MEMORANDUM OPINION

The debtors, Jacob and Tobitha Lara, filed their motion seeking actual and punitive damages, plus attorney's fees, for violations of the automatic stay and the discharge injunction by Vivint, Inc. Vivint did not respond to the motion or appear at the hearing held on the motion on February 22, 2017. The Laras appeared at the hearing and testified in support of their motion.

The Court concludes that Vivint did willfully violate the automatic stay and discharge injunction. As set forth below, the Court awards actual and punitive damages, plus the requested attorney's fees.

The Court has authority to decide this matter under 28 U.S.C. §§ 1334(b) and 157(b)(2). This memorandum opinion contains the Court's findings of fact and conclusions of law. *See* Fed.R.Bankr.P. 7052 and 9014.

## I.

### A.

The Laras filed their joint chapter 7 bankruptcy case on September 15, 2016; Jacob Lara is 29, Tobitha Lara is 27. The Laras are represented by John J. Grieger, Jr., of Legal Aid of NorthWest Texas. Vivint is one of the Laras' creditors, holding an unsecured claim in an amount the Laras listed in their schedules as unknown. They misspelled Vivint as "Vivnt," but identified Vivint's claim as arising from a contract for a home security system. They stated that Vivint's address is 4931 North 300 West, Provo, Utah 84604.

The home security system was installed by Vivint at the Laras' residence in Midland, Texas. Several months before their bankruptcy filing, the Laras moved to Seminole, Texas.

The Laras, on Schedule G, which concerns leases and executory contracts, stated that they were rejecting the contract with Vivint.

Vivint is a domestic, for-profit corporation that has the location of its registered agent as 4931 N 300 W, Provo, Utah 84604. Debtors' Ex. C. A formal notice of the Laras' bankruptcy filing was served by first class mail by the Bankruptcy Noticing Center on Vivint at 4931 North 300 West, Provo, Utah 84604-5816. The official notice describes the filing, the imposition of the automatic stay, and that the debtors, the Laras, would be seeking a discharge through their bankruptcy filing. The notice further informed creditors that there were no assets in the estate and thus the filing of proofs of claim was unnecessary.

Prior to filing their bankruptcy case, the Laras paid their Vivint account through an

arrangement with Vivint by which Vivint would draft their account to pay for services provided by Vivint. Shortly after the Laras' bankruptcy filing on September 15, 2016, Vivint drafted $63.00 from the Laras' account. Tobitha Lara immediately called a Vivint representative and advised her of the bankruptcy filing. The Vivint representative was sympathetic, advising Mrs. Lara that she, too, had once filed a bankruptcy case. Another Vivint representative advised Mrs. Lara that the $63.00 would be refunded, which in fact it was two weeks later. In doing so, Vivint obviously recognized that it had run afoul of the automatic stay that is imposed upon a bankruptcy filing.

Despite rectifying the original stay violation, Vivint continued to demand payment from the Laras for their then past due account of approximately $60.00. Vivint representatives made several phone calls to the Laras, both to Tobitha Lara at their home number and to Jacob Lara to his cell phone while he was working. Each time the Laras advised the caller of their pending bankruptcy case.

Then, on October 26, 2016, Vivint started sending monthly emails demanding payment. On October 26, 2016, Vivint sent an email to the Laras stating, "Jacob, your account is 30 days past due." The email, in a highlighted box, exclaimed, "Past Due Account!" It also had a smaller highlighted box stating, "Make Payment." The address at the bottom of the email is 4931 N. 300 W, Provo, Utah 84604. The body of the email stated that Vivint was sending "this *friendly* reminder" that the Laras' balance was overdue. Debtors' Ex. E. (emphasis added). The email further recited that it was an attempt to collect a debt and that any information obtained would be used for such purpose. *Id*.

A second demand was made by Vivint's email dated November 26, 2016. It stated, "Jacob, your account is 60 days past due." It contained the same highlighted statements but, in

the body of the email, stated that "we *encourage* you to make your payment as soon as possible." Debtors' Ex. F. (emphasis added). It further stated that if a payment arrangement was not made, Vivint would accelerate the agreement for immediate collection. The same address for Vivint was included.

The third email from Vivint is dated December 27, 2016. It stated, "Jacob, your account is 90 days past due." Though the larger highlighted box stated, "Past Due Account!", the smaller highlighted box said, "Call Now." The body of the email said that it was extremely important that the Laras contact Vivint to resolve the payment and that Vivint "*strongly* urge[s] you to pay your balance as soon as possible…." It also threatened acceleration of the agreement.

On December 29, 2016, the Laras received their discharges under section 727 of the Bankruptcy Code. Notice of the discharges, like the original notice of the Laras' bankruptcy filing, was mailed to Vivint at 4931 North 300 West, Provo, Utah 84604-5616. Debtors' Ex. H. It was mailed to all creditors, including Vivint, on January 1, 2017.

Shortly after the Laras received their discharges, Vivint sent yet another demand to the Laras, advising again that they were 90 days past due. This demand, however, was sent from the Vivint Collection Center in Chicago, Illinois. Though using a different format, it stated that it was "extremely important" that the Laras contact Vivint concerning payment; the Laras were "strongly" urged to pay the balance as soon as possible. It said that the total amount "DUE UPON RECEIPT" was $62.78. Debtors' Ex. I.

Finally, on January 27, 2017, again from the Provo, Utah address and in the same format as the prior notices from such address, Vivint advised the Laras that they were 90 days overdue and that they were "strongly" urged to pay the balance as soon as possible. All notices from Vivint from the Provo, Utah address recited that they were an attempt to collect a debt and that

any information obtained would be used for such purpose. This demand was made 17 days *after* the Laras filed the motion here and served it on Vivint.

**B.**

The Laras' attorney, John J. Grieger, Jr., submitted his affidavit in support of an award of attorney's fees for Vivint's multiple stay violations. Grieger spent 18.7 hours on this matter; he values his time at $400 an hour. The fees do not include time expended by two other attorneys with Legal Aid of NorthWest Texas that worked on the case. Nor does it include time spent traveling from Wichita Falls, Texas, where Grieger maintains his office, to Lubbock for the hearing.

Grieger has been licensed to practice law since 1990. His prosecution of the matter was handled competently and professionally. He also used good judgment in counseling the Laras concerning their rights. The $400 rate is an approved rate adopted by the Board of Directors of Legal Aid of NorthWest Texas for an attorney that has been licensed for 20-30 years. All fees were incurred as a direct result of Vivint's stay violations. The fees are fair and reasonable under the circumstances.

**II.**

The automatic stay is *the* protection afforded to an individual that seeks relief under our nation's bankruptcy laws. The coverage of the automatic stay, by the provisions of the Bankruptcy Code, is both broad and specific. It stays the "commencement or continuation" of a "judicial, administrative, or other action or proceeding against the debtor"; it stays any "act to collect, assess, or recover a claim against the debtor"; it covers the attempted enforcement of a judgment against the debtor or the debtor's property; it encompasses any acts that seek to "obtain possession" or "control" over estate property, including any act to "create, perfect, or enforce"

any lien; and it covers any act to "collect, assess, or recover a claim" against the bankruptcy estate. *See* 11 U.S.C. § 362(a). The action stayed must concern rights and claims that arose before the commencement of the bankruptcy case. *Id.*

The debt here that Vivint was seeking to collect arose before the Laras filed their bankruptcy case, which, as with all the alleged facts, Vivint has not disputed. The motion for sanctions was filed on January 10, 2017; it contained a conspicuous notice stating that interested parties had until February 3, 2017 to file an objection or other response to the motion. The motion recites, and correctly so, that the Laras not only listed Vivint as an unsecured creditor, but they also listed the contract between Vivint and the Laras as an executory contract that the Laras were rejecting. The facts as determined from the evidence mirror the facts alleged by the Laras' motion. The motion asserted that the repeated violations of the automatic stay and the discharge injunction were willful and that the Laras were thereby injured by Vivint's conduct. Vivint was properly served with the motion and did not file a response and made no appearance at the hearing. Vivint is deemed to have admitted the Laras' allegations.

## A.

Section 362(k) of the Bankruptcy Code provides that a willful stay violation concerning an individual debtor mandates an assessment of damages against the violator. "Willfulness within the context of an alleged stay violation is almost universally defined to mean intentional acts committed with knowledge of the bankruptcy petition." *In re San Angelo Pro Hockey Club, Inc.*, 292 BR 118, 124 (Bankr. N.D. Tex. 2003) (internal citations omitted). Vivint's demands—through phone calls and, particularly, through the formal demand letters emailed or mailed to the Laras—were made intentionally. Vivint knew that the Laras had filed bankruptcy. The Laras, through counsel, submit that Vivint had at least five discreet chances to honor and abide by the

automatic stay. The first chance arose upon receipt of the initial notice of the Laras' bankruptcy filing. Second was when Tobitha Lara contacted the Vivint representative after Vivint drafted the Laras' bank account. The third chance arose from the multiple times the Laras advised Vivint representatives of the bankruptcy filing in phone conversations had between Vivint and the Laras. The Laras' discharge and Vivint's receipt of notice of the discharge was the fourth opportunity. The fifth chance arose upon the Laras' filing of the motion here. Given its failure to respond to the motion here, Vivint has offered no explanation for its conduct. The Court can only conclude that Vivint's conduct arose from base-level incompetence or, worse, was intentional.

The Laras and their counsel request an award of actual damages of $500.00, plus attorney's fees of $7,480.00; they seek punitive damages of $10,000.00 for each of the five chances that Vivint had to rectify its conduct.

Actual damages of $500.00 covers, at least partly, the Laras out-of-pocket expenses for dealing with this. They traveled to Lubbock for the hearing. Tobitha Lara makes $12.50 an hour; Jacob Lara makes $14.50 an hour. Both Jacob and Tobitha Lara testified that they missed several hours of work. Vivint's conduct caused stress and frustration for the Laras. In making this assessment, the Court notes that the Laras were not overly sensitive and were not easily aggravated. They simply wanted Vivint to recognize and abide by what they understood to be the most basic protection provided by their bankruptcy filing—that creditors could no longer hound them for their debts. The price of filing bankruptcy, and all that that entails, affords debtors this basic protection.

The evidence establishes that the Laras incurred actual damages of at least $500.00 due to missed work and pay as a result of Vivint's conduct. An award of the $7,480.00 in attorney's

fees is likewise appropriate. The Court assumes that the Laras have not paid such fees to Legal Aid of NorthWest Texas and will therefore direct that the award of attorney's fees goes to Legal Aid of NorthWest Texas.

### B.

The statute further provides that individuals injured by a willful stay violation may, in appropriate circumstances, recover punitive damages. § 362(k). The Fifth Circuit has held that "egregious conduct" by the violator is an appropriate circumstance for an award of punitive damages. *Young v. Repine* (*In re Repine*), 536 F.3d 512, 521 (5th Cir. 2008). Vivint's conduct beyond the first stay violation (the drafting of the Laras' account for the $63.00) was egregious. In determining the amount of punitive damages, the Court considers the degree of reprehensibility of Vivint's conduct, the disparity between the harm or potential harm to the Laras and the punitive damages, the difference between penalties imposed in comparable cases, and the need to deter such conduct in the future. *Bruner-Halteman v. Educ. Credit Mgmt. Corp. (In re Bruner-Halteman),* 12-32429-HDH-13, 2016 WL 1427085, at *9 (Bankr. N.D. Tex. April 8, 2016).

Vivint's failure to honor the basic promise of the Bankruptcy Code and to continue to do so after multiple notices was outrageous. The Laras request punitive damages of $10,000.00 for each of the five instances that Vivint was reminded that it needed to stop. This is a reasonable approach. In this regard, the Court denies an award for punitive damages for Vivint's first stay violation caused by its drafting the Laras' account. This occurred proximate to filing of the case and was rectified after Tobitha Lara contacted Vivint. But somehow, and for some reason, Vivint persisted in its efforts to collect its $63.00 and it ramped-up its efforts with each demand—a "friendly reminder" evolved to "strongly" urging payment of the $63.00 that was

"DUE UPON RECEIPT." The Court, therefore, awards punitive damages of $2,000.00 for Vivint's failure to cease its collection efforts after its second chance, the phone call made by Tobitha Lara after the drafting of the Laras' account; $4,000.00 for its failure to stop in light of the various phone calls between the Laras and Vivint; $8,000.00 for its continued demands after the Laras' discharge; and $10,000.00 for ignoring the motion here.

### III.

The total award is as follows:

(1) $500.00 in actual damages and $24,000.00 in punitive damages to the Laras; and

(2) $7,480.00 in attorney's fees that shall be paid to Legal Aid of NorthWest Texas.

The Court will issue an order in accordance with this Memorandum Opinion.

### End of Memorandum Opinion ###